UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
    For Online Publication Only
-----------------------------------------------------------------X
JESSE LEE STEWART, JR.,

          Petitioner,

      -against-                **MEMORANDUM AND ORDER**
                                20-CV-0329 (JMA)
STATE OF NEW YORK,

          Respondent.

-----------------------------------------------------------------X

**FILED**
**CLERK**

9/22/2021 12:10 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Jesse Lee Stewart, Jr.
    *Pro se Petitioner*

Caren Cornin Manzello, Assistant District Attorney
Suffolk County District Attorney's Office
200 Center Drive
Riverhead, NY 11901
    *Attorneys for Respondent*

**AZRACK, United States District Judge:**

On June 29, 2016, following a jury trial in state court, Jesse Lee Stewart, Jr. ("Stewart") was convicted of one count of Robbery in the First Degree and one count of Attempted Robbery in the First Degree. On July 29, 2016, Stewart was sentenced, as a prior felony offender, to ten years of imprisonment and five years of post-release supervision on the Robbery in the First Degree count, and nine years of imprisonment and five years of post-release supervision on the Attempted Robbery in the First Degree count, with both sentences to run concurrently.

Stewart, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising various grounds for relief. For the following reasons, all of Stewart's proffered grounds are either procedurally barred or without merit. Therefore, the petition is DENIED in its entirety.

The following facts are taken from the petition and the state court record.[1]

## A. **Factual Background**

The evidence at trial demonstrated that on April 3, 2015, Stewart robbed Miguel Suarez and Eric Pozowicz by pointing a semi-automatic handgun first at Suarez, demanding cash and stealing $110.00 from Suarez, then pointing the gun at Pozowicz and threatening to "blow his kneecaps off" before Stewart fled before taking any money from Pozowicz.

In April 2015, Miguel Suarez and Eric Pozowicz were friends living together in in Brentwood, New York. (Tr. 409, 464, 468.) Suarez and Pozowicz each receive housing through Adelante, a mental health program that supports individuals with mental disabilities and illnesses through providing training classes, supportive programs, and housing. (Tr. 410, 464.) At trial, Suarez testified that he was unemployed, did not graduate from high school, suffered from severe depression and schizophrenia, and received disability payments. (Tr. 405-06.) Pozowicz graduated high school; however he was in special education classes and struggled as an adult with depressive disorder and ADHD. (Tr. 463-64.) Pozowicz also received assistance from the Department of Social Services. (Tr. 463.)

Both Suarez and Pozowicz were also friends with an individual named Martin Karl. (Tr. 410, 468-69.) Karl previously lived with Suarez and Pozowicz in their Brentwood apartment for approximately one year. (Tr. 410-11, 469.) Karl was a certified alcohol and substance abuse counselor for approximately twenty years, but as of April 2015, he was no longer employed and received disability payments for various ailments, including diabetes, ADHD and depression. (Tr. 581-83.) In 2015, Karl resided in the Hemlock apartments in Bay Shore, New York. (Tr. 411,

---

[1] "Tr." refers to the trial transcript, <u>People v. Stewart</u> Trial Tr., June 20-24, 27-29, 2016. "Hr'g Tr." refers to the <u>Huntley</u> hearing held on April 25, 2015. "S." refers to the transcript for the sentencing proceedings, <u>People v. Stewart</u> S. Tr., July 29, 2016.

469, 583.)  Both Pozowicz and Karl testified that they had both previously struggled with drug abuse.  (Tr. 465, 584-85.)  At the beginning of each month, when the disability checks came, both Suarez and Pozowicz met with Karl and went to the Amityville Payroll Services ("APS") check cashing establishment on Brentwood Road in Bay Shore.  (Tr. 415, 470-71.)  Suarez and Pozowicz went with Karl when he cashed his check to protect him and prevent people from possibly taking advantage of him.  (Tr. 586.)

Stewart also lived at the Hemlock apartments with his sister and girlfriend, Jennifer Shah, and was neighbors with Karl.  (Tr. 469, 584, 606-07.)  Pozowicz met Stewart, known as "Checks," through Karl, and Pozowicz later introduced Stewart to Suarez.  (Tr. 412, 470, 583-84.)  Pozowicz warned Suarez not to trust to Stewart; however within days of meeting, Stewart was using Suarez's bank account to cash bad checks.  (Tr. 412, 475.)

Stewart approached Suarez with a plan to make money off false checks and asked Suarez for his ATM card and pin number for his Citibank bank account. (Tr. 412-13.)  Suarez provided Stewart with the ATM card and pin because he trusted him and thought he was a good friend.  (Tr. 412-13.)  Citibank later contacted Suarez regarding the activity on the account, and Suarez closed his Citibank account on April 2, 2015.  (Tr. 414-15.)  As such, Stewart no longer had access to Suarez's Citibank account as of April 2, 2015.  (Tr. 415.)

The following day, on April 3, 2015, Pozowicz and Suarez had plans to meet Karl at APS cash checking so that he could cash his disability check.  (Tr. 415-16, 470, 586-87.)  Pozowicz and Suarez left their home in Brentwood and took the public bus to Brentwood Village Shopping Center, where APS is located.  (Tr. 415-16, 471.)  Pozowicz also brought his bicycle with him on the bus because he had difficulty walking due to issues with his knees and back.  (Tr. 471.)  Karl met Pozowicz and Suarez at the Brentwood Village Shopping Center at approximately 1:00 p.m.,

and Suarez accompanied Karl into APS to cash his check while Pozowicz waited outside with his bicycle. (Tr. 416, 471-72, 587.)  After Karl cashed his disability check at 1:45 p.m., he and Suarez went to buy cigarettes at Rite Aid while Pozowicz waited for them at the bus stop. (Tr. 472, 587, 547.)

Karl and Suarez left Rite Aid when Stewart approached them.  Stewart was with his girlfriend, Jennifer Shah, who was driving a silver Acura. (Tr. 417, 588, 609-610.)  Stewart offered Karl a ride home, and Karl accepted and got into the car. (Tr. 589.)  Suarez began walking towards the bus stop when Stewart approached him and said, "where the F is my money?"  (Tr. 418.)  Suarez told Stewart he didn't know what Stewart was talking about. (Tr. 418.)  Stewart then pulled a semi-automatic pistol from his waist and told Suarez to "give me everything you got" as he pointed the pistol at Suarez's midsection. (Tr. 418, 443.)  Suarez, who was scared for his life, reached into his pocket and gave Stewart approximately $100.00, which was the remainder of his disability check and all the money he had on him. (Tr. 419-20.)

Pozowicz saw Stewart talking to Suarez and Karl from the bus stop and approached them out of concern for Suarez. (Tr. 475.)  Pozowicz knew about the false check scam and felt that Stewart was taking advantage of Suarez. (Tr. 475.)  Stewart pointed the pistol at Pozowicz's knees and threatened to blow his kneecaps off if he didn't give Stewart money. (Tr. 422, 475-76.)  Karl got out of the car to see what was going on, and Pozowicz told him "let's go."  (Tr. 476-77.)  Stewart, however, told Karl "you're not going anywhere" and to get back in the car, and Karl complied.  Stewart then got in the car without getting any money from Pozowicz and the car drove off.  (Tr. 422, 477, 590.)

As the car drove down the street, Suarez and Pozowicz chased after them.  (Tr. 422, 590.)  Suarez wanted to know why Stewart thought he was owed money and ask Stewart why he took

4

Suarez's money.  (Tr. 422.)  Pozowicz followed the car to try to see the license plate number as he called 911 and reported the robbery.  (Tr. 478, 524.)  Meanwhile, Stewart and Shah took Karl to a hotel.  (Tr. 590-91, 614.)  At the hotel, Karl testified that he saw the gun used in the robbery on the table, but wasn't sure whether it was Shah or Stewart who put it there.  (Tr. 591.)  Shah and Stewart left Karl at the hotel.  (Tr. 591-92, 615.)  Karl stayed in the hotel alone overnight, and the next morning, unsure of where he was, he left the hotel and called the police from a nearby store. (Tr. 592.)

Detective Donald Britton and Detective George Harrison were assigned to the robbery investigation on April 3, 2015.  (Tr. 337-38, 639.)  Suarez and Pozowicz were taken to precinct where they were interviewed by the detectives and told them what happened.  (Tr. 338, 639.) Afterwards, the detectives made numerous efforts to locate Stewart and Shah but were unsuccessful in locating them on April 3, 2015.  (Tr. 341-42, 640.)  There was no video surveillance of the incident, and the detectives were unable to recover the pistol.  (Tr. 341, 343.) Stewart was later arrested on July 29, 2015 at the Hemlock apartments.  (Tr. 342, 640.)

After his arrest, Stewart was taken to the precinct where he was lodged overnight.  (Tr. 641.)  The following day, on July 30, 2015, Det. Harrison came into the precinct to speak with Stewart regarding the incident.  (Tr. 641.)  Stewart was brought into an interview room, and before starting the interview, Det. Harrison opened the door to the room and introduced himself, asked Stewart if he would like water, and told Stewart he would be right back to speak with him.  (Tr. 642.)  In response, Stewart said "I know why I'm here, it's those crackheads, they said I robbed them."  (Tr. 642.)  When Det. Harrison told Stewart again that he would be right back, Stewart replied "don't bother, don't come back."  (Tr. 642.)  Thereafter, Det. Harrison did not attempt to interview Stewart.  (Tr. 642-43.)

Prior to trial, a suppression hearing was conducted before Hon. John B. Collins to determine whether Stewart's statements should be suppressed. (Hr'g Tr. 1-30.) Det. Harrison testified at the hearing regarding the circumstances of Stewart's statements. (Hr'g Tr. 7-22.) At the conclusion of the hearing, the hearing court denied Stewart's motion to suppress his statements. (Hr'g Tr. 26-27.) The hearing court found that Det. Harrison's exchange with Stewart was not the functional equivalent of a custodial interrogation, and, as such, Miranda warnings were not required. Instead, Stewart's statements were spontaneous and voluntary, and the prosecution was permitted to introduce the statements at trial. (Hr'g Tr. 26-27.)

Stewart's trial began on June 20, 2016 before the Hon. John J. Toomey. Prior to jury selection, the trial court conducted a Sandoval and Molineux hearing regarding any prior crimes or bad acts committed by Stewart. (Tr. 2-18.) With respect to the Molineux hearing, the prosecution made an application to introduce one specific prior bad act involving the check-cashing scheme. (Tr. 10.) The prosecution argued that they sought to introduce evidence regarding the check-cashing scheme to complete the narrative because the underlying scheme was inextricably interwoven with the robbery. (Tr. 10-12.)

As explained earlier, prior to the robbery, Stewart recruited Miguel Suarez, who the prosecution argued was easy prey as he was mentally disabled, and took Suarez's Citibank ATM card to deposit false checks into the ATM machine and withdraw the portion of funds that was immediately cleared. (Tr. 11.) Citibank notified Suarez, who then closed the account, which left Stewart without access to the account. (Tr. 11-12.) The prosecution argued that the robbery was the direct result of Stewart no longer having access to Suarez's bank account, and that was the impetus for the robbery—according to the prosecution, Stewart confronted Suarez looking for his money. (Tr. 12.) The trial court granted the prosecution's Molineux application finding that the

6

check-cashing scheme was relevant on the motive of the robbery, that it was necessary background information regarding the relationship between Stewart and one of the robbery victims, and that it completed the narrative.[2]  (Tr. 17.)

At trial, Shah was a prosecution witness.  Shah confirmed that she was living with her boyfriend Stewart and his sister in April 2015 and drove Stewart to the shopping center on April 3, 2015 at about 1:45 p.m. (Tr. 606, 610-12.)  Shah was driving her silver Acura that day.  (Tr. 609.)  She testified that she saw Stewart arguing with Suarez and Pozowicz about money, but denied seeing a Stewart with a pistol.  (Tr. 612-13.)  The prosecution also entered into evidence two recorded phone calls between Shah and Stewart during which Stewart told Shah not to talk to the police and to say he was in Binghamton, New York during the incident.  (Tr. 615-16.)

During summation,[3] the prosecution made several arguments regarding Shah's testimony. The prosecutor argued that Shah was no stranger to the law and testified that she had just plead guilty to stealing someone's identity two weeks prior to trial.  (Tr. 723.)  Furthermore, the prosecution argued that Shah's testimony that she never saw Stewart with a pistol was not credible. According to the prosecutor, at trial, Shah had to admit that she, her car, Stewart, Karl, Suarez, and Pozowicz were at the crime scene because she had made a statement to police prior to trial on that issue.  (Tr. 723-24.)  The prosecution argued, however, that Shah only testified that she didn't see a gun and she didn't see a robbery because, otherwise, she would have been admitting that she acted as the getaway driver and accomplice to Stewart's crimes.  (Tr. 724.)  When the prosecution

---

[2] Also prior to trial, and relevant to this petition, defense counsel raised two <u>Batson</u> challenges during jury selection. Defense counsel raised <u>Batson</u> challenges to the prosecution's use of peremptory challenges against prospective juror number four, Mr. Coleman, and prospective juror number eight, Mr. Cole.  The details of the <u>Batson</u> inquiry are discussed in detail below.

[3] Prior to summations, defense counsel made a motion to dismiss at the close of the prosecution's case, on the grounds that the prosecution failed to prove a <u>prima facie</u> case satisfying the elements of the two counts in the indictment.  (Tr. 667.)  The trial court denied defense counsel's motion.  (Tr. 668.)  The defense did not put forth a case or any witnesses. (Tr. 669.)

further asserted that that Shah was with Stewart "out there, doing what they're doing, robbing people[,]" defense counsel lodged an objection, which the court sustained. (Tr. 724-25.) The court did not issue any curative instruction, and no such instruction was requested by defense counsel.

Following summations, the trial court instructed the jury on the law, and the jury deliberated. During deliberations, the jury sent two jury notes to the court. Regarding jury note two, the court read the contents of the note on the record in the presence of counsel. (Tr. 786-90.) The note made the following requests: (1) to hear Stewart and Shah's phone call; (2) to know where Stewart and Shah were at the time of the phone calls and the dates they were made; and (3) whether Karl made a statement on April 4, 2015. (Tr. 786.) The trial court stated that the two phone calls between Stewart and Shah would be replayed for the jury, and both prosecution and defense counsel agreed. (Tr. 786-87.) The trial court further stated that it would inform the jury that there was no evidence regarding either Stewart and Shah's whereabouts at the time of the calls, or the dates the calls were made. (Tr. 787-88.) With respect to the last question, the trial court indicated that it would inform the jury that there was no statement by Karl introduced into evidence. (Tr. 787.) Both counsel found the trial court's response to be acceptable, and the trial court instructed the jury accordingly. (Tr. 788-89.)

On June 29, 2016, Stewart was found guilty of Robbery in the First Degree, Penal Law § 160.15(4), and Attempted Robbery in the First Degree, Penal Law § 110/160.15(4). On July 29, 2016, the trial court sentenced Stewart as a prior felony offender to ten years imprisonment with five years post-release supervision for Robbery in the First Degree and nine years imprisonment with five years of post-release supervision for Attempted Robbery in the First Degree, with both terms to run concurrently. (S. 11.)

**B. Post-Conviction Proceedings[4]**

**1. The § 330.30 Motion**

Prior to sentencing, on July 8, 2016, Stewart filed a pro se motion to set aside the jury's verdict pursuant to New York Criminal Procedure Law § 330.30 on the grounds that the prosecution failed to prove a prima facie case against him. (See Mot. to Set Aside Verdict, July 8, 2016, at ECF pp. 233-38.) At sentencing, the trial court denied Stewart's motion on the grounds that the eyewitness testimony was credible and that his guilt was proven beyond a reasonable doubt. (S. 9-10.) Stewart later renewed his § 330.30 as part of his first N.Y.C.P.L. § 440.10 motion, dated July 25, 2016. (See Mot. to Vacate J., July 25, 2016, Ex. I, at ECF pp. 233-38, ECF No. 40-1.)

**2. The Direct Appeal**

On December 18, 2017, Stewart appealed his conviction to the Second Department of the New York State Appellate Division. On appeal, Stewart argued:

(1) that the hearing court erred when it failed to suppress his statement, which was taken in violation of his constitutional rights;

(2) the prosecution improperly impeached their own witness;

(3) the prosecutor committed misconduct by vouching for prosecution witnesses, denigrating defense counsel, commenting on facts not in evidence, using the mental disabilities of the witnesses to inflame the passions of the jury, and, relatedly, defense counsel was ineffective for failing to object to this purported misconduct;

(4) he was denied a fair trial when the trial court improperly excluded a juror (prospective juror number 4, Mr. Coleman) for racially motivated reasons;

(5) the trial court's Molineux ruling was erroneous and deprived him of Due Process; and

(6) the prosecution failed to prove his guilt beyond a reasonable doubt and the jury's verdict was against the weight of the evidence.

---

[4] Respondent notes in their opposition papers that they omitted from the procedural history "numerous miscellaneous motion petitioner made that are not relevant to issues before this Court." See Resp. Return at ECF p. 13.

(See Def.'s App. Br., December 18, 2017 ("App. Div. Br."), at ECF pp. 99-137, ECF No. 40.)

Later, on August 8, 2018, Stewart filed a pro se supplemental brief, in which he argued that: (1) the trial court improperly denied his Batson challenge with respect to prospective juror number 12, Mr. Cole; (2) the prosecutor acted in bad faith by impeaching Jennifer Shah, and the trial court erred in allowing an edited version of the phone call into evidence; and (3) the trial court erred by failing to address his C.P.L. § 330.30 motion, and he was denied effective assistance of counsel when trial counsel failed to join in that motion; and (4) the trial court committed reversible error by improperly handling jury note number 2.  (See Def.'s Pro Se Supp. App. Br., August 8, 2018, ("Supp. App. Div. Br."), at ECF pp. 3-14, ECF No. 40.)

The Second Department affirmed Stewart's conviction.  People v. Stewart, 172 A.D.3d 1247 (N.Y. App. Div. 2d Dep't 2019).  With regard to the claim concerning Stewart's statement to the police, the Appellate Division found that Stewart's pre-Miranda statement was voluntary and spontaneous and "not the result of any police conduct or questioning which reasonably could have been expected to elicit an inculpatory response," and, as such, the appellate court agreed with the hearing court's decision to deny suppression of his statements.  Stewart, 172 A.D.3d at 1248. With respect to the Batson claims, the Appellate Division found that the trial court properly denied the challenges.  Id.  The Appellate Division explained that Stewart "did not claim that the prosecutor's race-neutral reasons for striking two prospective jurors were in fact pretextual, and, in any event, the reasons proffered were not pretextual."  Id.

The Appellate Division found that there was no merit to Stewart's Molineux claim, as the check-cashing scheme was part of the narrative of events and was probative of Stewart's motive for robbery.  Id.  Regarding the legal insufficiency of the evidence claim, the court found that the claim was unpreserved for appellate review, but, in any event, the court found that the evidence

10

was legally sufficient to prove Stewart's guilt beyond a reasonable doubt.  Id.  With respect to the remaining claims, the Appellate Division found that Stewart's remaining claims were unpreserved for appellate review and, in any event, without merit.  Id. at 1249.

On July 26, 2019, the New York State Court of Appeals denied Stewart's request for leave to appeal.  People v. Stewart, 33 N.Y.3d 1109 (N.Y. 2019).  Thereafter, Stewart moved for reconsideration, and on November 26, 2019 the Court of Appeals denied that request.  People v. Stewart, 34 N.Y. 3d 1019 (N.Y. 2019).

### 2.  Motions to Vacate Judgment

Stewart filed three motions before the trial court to vacate his judgment of conviction and set aside the verdict, pursuant to New York Criminal Procedure Law § 440.10, and all three motions were denied.  On July 25, 2016 Stewart filed his first pro se § 440.10 motion, wherein he renewed his C.P.L. § 330.30 motion, and also argued that:

> (1) he received ineffective assistance of trial counsel because counsel failed to challenge the grand jury proceedings and failed to request pretrial hearings;
>
> (2) the trial court erred by failing to acknowledge that the prosecution violated Batson by demonstrating a pattern of eliminating black male jurors;
>
> (3) the trial court erred by failing to refresh the jury pool when a prospective juror stated he knew Stewart;
>
> (4) the trial court erred by failing to dismiss the Robbery in the First Degree count after the prosecution failed to prove a prima facie case on that charge;
>
> (5) the trial court erred by allowing evidence regarding the check-cashing scheme;
>
> (6) the trial court erred by allowing into evidence edited versions of the phone calls between Stewart and Shah; and
>
> (7) the trial court mishandled jury note 2 with respect to Martin Karl's statement.

(See Mot. to Vacate J., July 25, 2016, at ECF pp. 218-19, ECF No. 40-1.)  The trial court denied the motion in its entirety.  (Dec. and Order, Jan. 11, 2017, at ECF pp. 246-47, ECF No. 40-1.)  The

trial court denied Stewart's ineffective assistance of counsel claim, finding that there were two pretrial hearings held, a <u>Huntley</u> hearing and a <u>Molineux</u> hearing, and Stewart "offers no basis upon which counsel should have moved for or requested any additional hearings and no facts to support the holding of those hearings." (Dec. and Order, Jan. 11, 2017 at ECF p. 247.)  In rejecting Stewart's other claims alleging numerous errors by the trial court, the court held that the alleged errors were record based and, as such, could be adequately raised on direct appeal.   (Dec. and Order, Jan. 11, 2017, at ECF p. 247.)

On October 13, 2017, the Appellate Division denied Stewart's application for leave to appeal the trial court's § 440 decision, and further denied Stewart's application to consolidate his appeal with his pending direct appeal of his judgment of conviction.  <u>See</u> Resp. Return at ECF p. 15.

In March 2017, Stewart filed his second <u>pro se</u> motion to vacate the judgment pursuant to C.P.L. § 440.10 in the trial court, and argued that he was denied effective assistance of counsel because, <u>inter alia</u>, trial counsel failed to:  (1) investigate and present a defense, (2) object to the trial court's mishandling of jury note two, and (3) object on <u>Batson</u> grounds and substantiate a "defense reason for the challenge and further contesting that the prosecutors reasons were in fact pretext for the truth."  Stewart also claimed that trial counsel was ineffective because although Stewart attempted to communicate with counsel, counsel only met with him once prior to trial.  In addition to his ineffective assistance claims, Stewart's second 440.10 motion also asserted that: (1) the trial court erred by failing to address his pretrial and post-trial <u>pro se</u> motions; (2) that there were numerous trial procedure violations, including <u>Rosario</u>, <u>Rahming</u>, <u>Molineux</u>, <u>Sorge</u>, and <u>Batson</u>; (3) the trial court committed various procedural errors, including permitting edited phone calls, mishandling jury note 2, failure to refresh the jury pool, failure to dismiss the charge of

12

Robbery in the First Degree, failure to address his C.P.L. § 330.30 motion, and disallowing trial counsel to file motions; and (4) that there were conflicting facts such that the verdict was against the weight of the evidence.  (See Second Mot. to Vacate J., Mar. 29, 2017, at pp. 3-17.)

On December 20, 2017, the Supreme Court, Nassau County, denied Stewart's motion in its entirety.  (See Dec. and Order, December 20, 2017, at pp. 1-2.)  The court held that many of the claims Stewart raised were based on matters in the trial record, and, thus, could have been raised on direct appeal.  Id.  Additionally, regarding Stewart's ineffective assistance of counsel claim, the court explained that that it previously determined on Stewart's first § 440.10 motion that there was no basis for any finding that counsel was ineffective and "[t]here is no basis to revisit those findings."  Id.  Stewart did not seek leave to appeal this decision to the Appellate Division.

Stewart filed his third pro se motion to vacate his judgement of conviction, pursuant to C.P.L. § 440.10, on July 22, 2019.   In his motion, Stewart argued that he received ineffective assistance of trial counsel because trial counsel:  (1)  erroneously agreed to the trial court's improper response to jury note 2; (2) failed to object on Batson grounds; (3) allowed the prosecutor to introduce into evidence edited phone calls; and (4) failed to investigate and present a defense.  (See Third Mot. to Vacate J., April 6, 2015, at pp. 1-10.)  Stewart also filed a supplemental motion on September 23, 2019, arguing that trial counsel was ineffective for failure to request a lesser-included charge to the jury.  (See Supp. Mot. to Vacate J., Sept. 23, 2019, at pp. 1-5.)

 The Supreme Court, Nassau County, denied Stewart's motion in its entirety.  (See Dec. and Order, December 16, 2019, pp. 1-2.)  The court found that Stewart had previously raised all of his claims in both his direct appeal and two prior § 440 motions.  Id. at p. 1.  The court stated that, pursuant to C.P.L. § 440.10(2)(a), the court must deny the motion where the ground or issue was previously raised and decided on the merits unless there has been a retroactively effective

change in the law.  Id.  Having found that Stewart failed to identify any such retroactive change in the law, the court denied his motion in its entirety.  Id. at pp. 1-2.  Stewart did not seek leave to appeal the decision to the Appellate Division.

### 3. The Instant Petition

Stewart filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 17, 2020, asserting eight grounds for relief:

(1) the trial court erred in addressing his Batson claims;

(2) the trial court erred by failing to suppress his custodial statements;

(3) the prosecutor improperly impeached her own witness;

(4) the prosecution engaged in misconduct, thus depriving him of a fair trial;

(5) the trial court's Molineux ruling denied him Due Process;

(6) the prosecution failed to prove his guilt beyond a reasonable doubt;

(7) the trial court failed to properly answer a jury note; and

(8) defense counsel was ineffective largely predicated on his other substantive claims.[5]

See Pet. at ECF pp. 5-19, ECF No. 1-7.)[6]  For the reasons discussed below, all of Stewart's claims are either procedurally barred or without merit.  Thus, the instant petition is DENIED in its entirety.

---

[5] Stewart's petition sets forth his claims on ECF p. 2.  After considering the entirety of his pro se petition, the Court liberally construes his petition to also include his claims that the trial court mishandled Jury Note 2 as well as his claims that trial counsel was ineffective in raising Batson challenges.

[6] The Court uses the pagination assigned by the electronic case filing system for ECF No. 1-7.

## II. DISCUSSION

### A. <u>Standards of Review</u>

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L.
No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas
corpus to state prisoners."  <u>Williams v. Taylor</u>, 529 U.S. 362, 399 (2000) (O'Connor, J.,
concurring).  Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is
in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.
§ 2254(a).  To make that showing, the petitioner must demonstrate: (1) the exhaustion of state
remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential
review of state court decisions.  <u>See</u> <u>id.</u> § 2254.

#### 2. Exhaustion

A court cannot review a habeas petition unless the petitioner "has exhausted the remedies
available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement first allows state courts
the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"
<u>Jackson v. Edwards</u>, 404 F.3d 612, 619 (2d Cir. 2005) (quoting <u>Picard v. Connor</u>, 404 U.S. 270,
275 (1971)).  Thus, a petitioner must show that he fairly presented his federal claim to the highest
state court from which a decision can be rendered.  <u>Daye v. Att'y Gen. of N.Y.</u>, 696 F.2d 186, 190
n.3 (2d Cir. 1982) (en banc).  Although the petitioner need not "'cite chapter and verse of the
Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely
to alert the state courts to the claim's federal nature.'"  <u>Jackson v. Conway</u>, 763 F.3d 115, 133 (2d
Cir. 2014) (quoting <u>Carvajal v. Artus</u>, 633 F.3d 95, 104 (2d Cir. 2011)).

### 3. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  A procedural rule is adequate if it is "firmly established and regularly followed by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotations omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 261-63 (1989) (internal quotations omitted).

This procedural bar applies even if the state court addressed a claim's merits in the alternative, but also decided that claim on independent procedural grounds.  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).  When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider

the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  To

demonstrate cause, a petitioner must put forth that "some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual

or legal basis for a claim was not reasonably available to counsel or that "some interference by

officials … made compliance impracticable."  Murray v. Carrier, 477 U.S. 478, 488 (1986)

(internal quotation marks and citations omitted).  A petitioner may also satisfy the cause

requirement by demonstrating that his attorney's failure to comply with state procedural rules

denied him constitutionally adequate representation.  See Tavarez v. Larkin, 814 F.3d 644, 650

(2d Cir. 2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).

To demonstrate prejudice, the petitioner "must establish … that the errors worked to his

actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." Torres v. Senkowski, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotations omitted).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a

petitioner's procedural default if he can show that a fundamental miscarriage of justice would

result.  For example, a petitioner can overcome a procedural bar by showing "that he is actually

innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d

Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  To prevail, the petitioner must put

forth "new reliable evidence … that was not presented at trial.  Because such evidence is obviously

unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup,

513 U.S. at 324.

Finally, it must be noted that "[t]he concepts of procedural bar and exhaustion often interact

in an important way." Dominguez v. Rock, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y.

Feb. 9, 2016). "If a § 2254 petitioner has failed to present a claim to a state court but can no longer

do so – for example, if the time to file a state-court appeal has passed – then that claim is considered procedurally barred rather than unexhausted."  Id. (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks and citation omitted).

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  Id. at 413.  This standard does not require that all reasonable jurists agree that the state court was wrong.  Id.

18

at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  <u>Jones</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'"  <u>Jones v. Murphy</u>, 694 F.3d 225, 234 (2d Cir. 2012) (quoting <u>Hardy v. Cross</u>, 132 S. Ct. 490, 491 (2011) (per curiam)).  This standard is "'difficult to meet,'" and for good reason.  <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (quoting <u>Metrish v. Lancaster</u>, 133 S. Ct. 1781, 1786 (2013)), <u>reh'g denied</u>, 134 S. Ct. 2835 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Id.</u> at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Lynn v. Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006).  A state court's findings of fact will be upheld "'unless objectively unreasonable in light of the evidence presented in the state court proceeding.'"  <u>Lynn</u>, 443 F.3d at 246–47 (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003)).  Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  <u>Williams,</u> 529 U.S. at 389.

### 5. Ineffective Assistance of Counsel

Because some of Stewart's claims also raise related ineffective assistance claims, it is helpful to set out the standard for ineffective assistance claims here.  As a general principle, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984).  After all, "there are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u> In reviewing the totality of the evidence, the Court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 13 (2013) (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011)).  Bearing in mind this deferential standard, it is no surprise that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail.  <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001).

 To establish deficient performance, a petitioner must prove that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  But even if the petitioner can show deficient performance, he must also establish prejudice – that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.

### 6. <u>Pro Se</u> Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Stewart's <u>pro se</u> status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" <u>Kirkland v. Cablevision Sys.</u>, 760 F.3d 223, 224 (2d Cir. 2014) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).  This liberal interpretation of the petition "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (quoting <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. 1981)).

**B.  Claims for Relief**

As stated above, Stewart seek habeas relief on eight separate grounds:

(1) the trial court erred in addressing his <u>Batson</u> claims;

(2) that the trial court erred by failing to suppress his custodial statements, which were taken in violation of his Constitutional rights;

(3) that the prosecutor improperly impeached her own witness;

(4) that the prosecution engaged in misconduct, thus depriving him of a fair trial;

(5) that the trial court's <u>Molineux</u> ruling denied him Due Process;

(6) that the prosecution failed to prove his guilt beyond a reasonable doubt;

(7) the trial court failed to answer a jury note; and

(8) that the defense counsel was ineffective on multiple grounds.

(<u>See</u> Pet. at ECF pp. 18-82.)   For the following reasons, the petition is DENIED in its entirety.

**1.  Batson Claims**

**a.  Overview**

Stewart seeks habeas relief on the ground that the trial court's exclusion of two potential Black jurors—who were allegedly challenged by the prosecution for racially motivated reasons—violated <u>Batson</u>.  Petitioner advances three arguments with respect to <u>Batson</u>:

(1) the trial court erred because, in addressing the prosecution's use of a peremptory challenge on Mr. Cole (prospective juror number 8), the trial court did not make an explicit finding on the issue of pretext at the third step at the <u>Batson</u> analysis;

(2) the trial court erred in upholding two of the prosecution's peremptory challenges that were used to excuse Mr. Cole and another Black juror; and

(3) trial counsel was ineffective because he did not explicitly argue that the reasons proffered by the prosecutor for striking Mr. Cole were a pretext for discrimination.

(Pet., at ECF pp. 39-63.)   In addition to addressing these claims in his petition, Stewart also discusses them at length in his reply papers, (ECF No. 26), and in numerous other filings with the Court, including his requests for bail.   The Court has considered all of those submissions and the arguments and authority set out therein.

In <u>Batson</u>, the Supreme Court established a three-part test for a trial court to evaluate whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a prima facie showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race"; (2) "[i]f the party making the <u>Batson</u> challenge establishes a prima facie case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination."   <u>Galarza v. Keane</u>, 252 F.3d 630, 635-36 (2d Cir. 2001) (citing <u>Batson v. Kentucky</u>, 476 U.S. 79, 96-98 (1986)).

"[W]hen reviewing a <u>Batson</u> challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, <u>inter alia</u>, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record."   <u>Id</u>. at 635 (2d Cir. 2001).   In <u>Watson v. Ricks</u>, the Second Circuit stated

> On direct appellate review of a <u>Batson</u> ruling, we generally afford "great deference" to a district court's determination of discriminatory intent, because that question of fact often turns on the court's evaluation of witness credibility.   When a state trial court's <u>Batson</u> ruling is challenged under § 2254, our review is further limited by [AEDPA], under which we will not identify constitutional error unless the record "compel[s] the conclusion that

> the trial court had no permissible alternative but to reject the
> prosecutor's race-neutral justifications."

427 F. App'x 60, 61 (2d Cir. 2011) (citations omitted).  "Throughout the Batson procedure, the

burden of proving that a strike was exercised on an impermissible discriminatory ground remains

with the movant."  Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006).

Following voir dire of a panel of prospective jurors, the prosecution and defense counsel

went through their respective challenges.  (Tr. 102-113.)  The prosecution used peremptory

challenges on prospective jurors numbers 1 through 4, which included Mr. Dillon (prospective

juror number 3) and Mr. Coleman (prospective juror number 4), who were both Black.  (Tr. 107.)

After the prosecution exercised a peremptory challenge on Mr. Coleman, defense counsel asked

the trial court for a race-neutral reason for the challenge against Mr. Coleman, arguing that using

peremptory challenges on two Black jurors constituted a pattern.  (Tr. 107-08.)  The prosecution

responded that Mr. Coleman was accused of crimes similar in nature to the charges against Stewart.

Over defense counsel's objection that the juror stated he could be fair and impartial, the trial court

found this explanation to be a race-neutral reason, and permitted the prosecution's preemptory

challenge to Mr. Coleman.  (Tr. 108-09.)

Thereafter, the prosecution used another peremptory challenge on prospective juror

number 8, Mr. Cole, who was also Black.[7]

Earlier during jury selection, Mr. Cole engaged in the following exchange with counsel:

> Ms. Shetty[8]:    Mr. Cole, how do you feel about being a juror?
>
> [Mr. Cole]:     Never experienced this before.

---

[7] The Respondent's opposition papers refer to Mr. Cole as being African American.  See Resp. Return, D.E. 39, ECF p. 6.  In his petition, Stewart refers to Mr. Cole as "Black."  (Pet. at ECF p. 40.)  However, the Court notes that a thorough review of the trial record reveals that Mr. Cole is in fact Caribbean American as he is from Jamaica.  (Tr. 110.)  As such, the Court shall refer to the prospective jurors in question as Black.

[8] Ms. Shetty is the prosecutor, and Mr. Russo is defense counsel.

MR. RUSSO:   Uh-huh.

[Mr. Cole]:   Originally from the island Jamaica. I've been here like 15 years. I mean, you know, I don't know too much about the law. You know, I know a little.

MR. RUSSO:   You don't have to be –

[Mr. Cole]:   Not too much.

MR. RUSSO:   You don't have to be a legal scholar here, because you are the judge of the facts. The judge will tell you what the law is and you got to follow it. But as far as witnesses coming in this courtroom, and telling you a story, are you capable of evaluating it?

[Mr. Cole]:   To my level of extent, you know.

MR. RUSSO:   Are you

[Mr. Cole]:   I'm not like high school graduate or stuff like that.

MR. RUSSO:   I understand.

[Mr. Cole]:   I got common sense.

MR. RUSSO:   Do you have trouble with the English language?

[Mr. Cole]:   No.

MR. RUSSO:   You could understand what I'm saying, right, and you could certainly understand what a witness tells you?

[Mr. Cole]:   (Nodding.)

MR. RUSSO:   Anything else about being here for the next week or so that affects your life?

[Mr. Cole]:   Well, only thing, I'm self-employed.  I got to go to work, That's it.

MR. RUSSO:   That's important, because you earn the money, right, nobody pays you. If you are here, is that going to be a hardship for you?

[Mr. Cole]:   Well, just as I say I'm self-employed. You know, a lot of

|  | people rely on for work. |
|---|---|
| MR. RUSSO: | Here's what I'm worried about. I don't want you to be here if I have to worry that you're going to hold it against Jesse over there. |
| [Mr. Cole]: | No, I wouldn't do that. |
| MR. RUSSO: | Not going to happen, right? |
| [Mr. Cole]: | No. |
| MR. RUSSO: | Thank you, sir. |

(Tr. 87–89.)

Subsequently, after the trial court rejected the <u>Batson</u> challenge as to Mr. Coleman (prospective juror number 4), the prosecution sought to use a preemptory challenge on Mr. Cole (prospective juror number 8). This prompted the following colloquy:

| THE COURT: | Robert Cole. |
|---|---|
| MS. SHETTY: | Judge, we are going to use one, and the reason is I'm concerned he would be distracted by his employment issues. |
| MR. RUSSO: | I'm going to have the same objection with regards to Batson. |
| MS. SHETTY: | Additionally – – |
| THE COURT: | He actually said that he would sit here and he wouldn't be distracted. |
| MR. RUSSO: | Right. |
| THE COURT: | I mean – – |
| MS. SHETTY: | Just so – – these on for cause challenges? |
| THE COURT: | It is for cause. |
| MS. SHETTY: | No, peremptory. |

| | |
|---|---|
| THE COURT: | That's what I mean, it is for peremptory. |
| MS. SHETTY: | That's one reason and the other reason is language barrier. |
| THE COURT: | He didn't have a language barrier and he was asked.  He's from Jamaica, he speaks English and he understood Mr. Russo perfectly and Mr. Russo asked him, and he said affirmatively he is not a – – he asked him about – – he did have some reservations about his business, but he said he could be here and be fair and I think Mr. Russo then said I'm concerned with you not holding it against my client, because you're not paraphrasing Mr. Russo, you are not making money while you are sitting here listening to this case, would you hold it against my client, and he answered negatively. |
| MS. SHETTY: | Again, I'm not excusing him to cause.  I have given the reason for the peremptory. I will point out for the record we kept Kayla Brooks, who is also of the same race. |
| THE COURT: | People, on number 10, Crystal Bakewicz. |
| THE CLERK: | Number eight, a preemptory [sic] challenge by the People. |
| | That's number five, you got 10 left, People. |

(Tr. 109-11.)

### b.  The <u>Batson</u> Claims are Procedurally Barred

As an initial matter, Stewart's <u>Batson</u> claims are procedurally barred because the Appellate Division denied the <u>Batson</u> claims on independent and adequate state law procedural grounds. Failing to preserve a <u>Batson</u> challenge for appeal "constitutes an independent and adequate state ground" which precludes a habeas court from considering a claim for relief.  <u>Rodriguez v. Schriver</u>, 392 F.3d 505, 509–10 (2d Cir. 2004).  The Appellate Division held that "[t]he defendant did not

26

claim that the prosecutor's race-neutral reasons for striking two prospective jurors were in fact pretextual, and, in any event the reasons proffered were not pretextual." Stewart, 172 A.D.3d at 1248.  In support of its decision, the Appellate Division cited People v. Terrell, 149 A.D.3d 1108 (2d Dep't. 2017) and People v. Rubin, 143 A.D.3d 846 (2d Dep't 2016), two cases in which the court found that the defendants failed to preserve their Batson challenge for appellate review by not objecting to the prosecution's proffered race-neutral explanation and arguing that the explanation was in fact pretextual.  Terrell, 149 A.D. 3d at 1108, Rubin, 143 A.D.3d at 846.  Thus, Stewart failed to preserve his claim for appellate review, and, as such, his claim is procedurally barred.[9]  See Rodriguez, 392 F.3d at 509–10; Hayes v. Conway, No. 08-CV-5280, 2010 WL 2921587, at *6 (E.D.N.Y. July 19, 2010) (finding Batson claim procedurally barred and explaining that "New York courts have consistently declined review where a '[d]efendant failed to preserve his current claim that the court did not follow the three-step Batson protocols in determining various claims of discriminatory exercise of peremptory challenges'") (quoting People v. Swails, 250 A.D.2d 503, 503 (N.Y. App. Div. 1st Dep't.1998))); Cruz v. Smith, No. 05-CV-10703, 2010 WL 582348, at *16–21 (S.D.N.Y. Feb. 17, 2010) (explaining that "[u]nder New York's contemporaneous objection rule, a defendant is required to argue explicitly at trial that the prosecution's explanation for its peremptory strikes is pretextual, if the defendant wishes to raise such a claim on appeal" and finding Batson claims procedurally barred); see also Terrell v. Kickbush, No. 17-CV-7027, 2019 WL 3859512, at *6 (E.D.N.Y. Aug. 16, 2019); Rubin v. Lamanna, No. 18-CV-1924, 2019 WL 3557693, at *7–8 (E.D.N.Y. Aug. 5, 2019).  Compliance

---

[9]  Defense counsel's solitary comment of "right" during the discussion of Mr. Cole was not sufficient to raise a claim that the prosecutor's race-neutral reasons for striking two prospective jurors were, in fact, pretextual.  The Appellate Division's ruling was not an "exorbitant" application of this state law procedural requirement.  Whitley v. Ercole, 642 F.3d 278, 286–88 (2d Cir. 2011) (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)).

with this state law procedural rule was particularly important here where Petitioner seeks habeas relief by arguing, inter alia, that the trial court's ruling at step three of the Batson issue was not sufficiently explicit.  New York has a strong state interest in requiring defense counsel to be specific and clear when making a Batson challenge, particularly in the circumstances here.

In order to overcome the procedural bar, Stewart must demonstrate cause for, or actual prejudice resulting from, the default.  Coleman, at 750.  While Stewart does not have a viable actual innocence claim, he could satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation. Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).  However, to do so, Stewart would have to first establish that he exhausted this ineffective assistance argument.  Edwards v. Carpenter, 529 U.S. at 446, 452 (2000).  And, if even if Stewart exhausted that ineffective assistance claim, that claim could not be asserted as "cause' for the underlying Batson claim if the ineffective assistance claim was denied on procedural grounds and, thus, was itself procedurally barred.  Id. at 453–54.

Here, in his second § 440.10 motion, Stewart argued that trial counsel was ineffective for failing to object to the prosecution's proffered race-neutral explanation on the grounds that it was pretextual.  However, after the trial court denied that motion, Stewart did not seek to appeal that denial to the Appellate Division.  Stewart then filed a third § 440.10 motion that again sought to raise an ineffective assistance of counsel claim concerning Batson.  The trial court also denied this third § 440.10 motion and, again, Stewart did not seek to appeal that denial to the Appellate Division.  Accordingly, Stewart failed to exhaust this ineffective assistance allegation and, thus, it cannot constitute cause to excuse the procedural default for his underlying Batson claim.  Because Stewart cannot overcome the procedural bar, his Batson claim must be denied.

Moreover, as discussed <u>infra,</u> even if this claim were not procedurally barred, it fails on the merits.

### c. Trial Court's <u>Batson</u> Ruling Concerning Mr. Cole

Stewart argues, on the merits, the trial court erred because it did not explicitly make a finding at the third step of the <u>Batson</u> analysis, where the court had to determine whether the prosecution's proffered justification for excusing Mr. Cole was a pretext for discrimination. This Court disagrees.

In <u>Messiah v. Duncan</u>, the prosecutor exercised a peremptory strike against a prospective juror and offered a race-neutral reason for the challenge. 435 F.3d 186, 190 (2d Cir. 2006). The following colloquy then occurred:

| [Defense Counsel]: | I would note, your Honor, for the record that he's the only black juror on the panel. |
| THE COURT: | You can stop that nonsense. That's not true. Stop that. That is not true. He and number thirteen. |
| [Defense Counsel]: | I was just going to say other than Mr. Smith, number thirteen, who is going to be excused by consent. |
| THE COURT: | Anything else you wish to add? |
| [Defense Counsel]: | Our striking? |
| THE COURT: | With reference to these. That's five, five by the People. |

<u>Id.</u> at 190–91. The Second Circuit concluded that the trial court's response stating, "stop that nonsense" was not an adjudication of "the credibility of the non-moving … party's race neutral explanations for … peremptory striking potential jurors." <u>Id.</u> (quoting <u>Jordan v. Lefevre</u>, 206 F.3d 196, 200 (2d Cir. 2000)). The Second Circuit, however, found that the trial court's subsequent statement—"With reference to these. That's five, five by the People"—was an adequate ruling on the <u>Batson</u> claim, explaining that "[c]lear acceptance of that strike following the <u>Batson</u> challenge,

the proffered race-neutral explanation, and the ensuing discussion was a succinct but adequate Batson ruling." Id. at 199.

In contrast, in Dolphy v. Mantello, the Second Circuit found that where the trial court failed to assess the credibility of the prosecutor's race-neutral explanation, there was no adjudication of the Batson challenge.  552 F.3d 236, 239 (2d Cir. 2009).  In Dolphy, after the defendant raised a Batson challenge, the prosecutor offered as a race-neutral explanation that the potential juror he was seeking to preempt was overweight, and, as a general rule, the prosecutor did not select overweight individuals for jury service under the belief that overweight individuals tend to be more sympathetic to defendants.  Dolphy, 552 F.3d at 237.  After quickly confirming that the prosecutor was claiming that "'race had nothing to do with it,'" the trial court then immediately ruled, stating: "Very well.  Strike will stand.  Defense has its exception, record's preserved, that will be an issue." Id.  Defense counsel subsequently renewed the Batson objection, arguing that the prosecutor had previously selected overweight juries in the past, and the trial court again stated that it was satisfied with the race-neutral explanation.  Id.  The trial court then responded, "[T]hat's neither here nor there.  I'm satisfied that is a race neutral explanation, so the strike stands."  Id.

The Second Circuit held om Dolphy that the trial court "failed to assess the credibility of the prosecution's explanation," and, thus, failed to adjudicate the Batson claim on the merits.  Id. at 239–40.  The Second Circuit explained that the trial court made its initial ruling without inquiry or a finding, and the trial court's subsequent statement accepting the strike did not indicate that the trial court credited the prosecution's explanation.  Id.  The Second Circuit also stressed that the trial court's statement suggested that it may have thought that the mere proffer of a race-neutral reason—which is only step two of the Batson analysis—was alone sufficient to deny the Batson challenge.  Id.

Here, the Court finds that the facts are distinguishable from that of <u>Dolphy</u> and are, instead, akin to the trial court's ruling in <u>Messiah</u>.  Instead of merely relying on the race-neutral reason proffered by the prosecution, the trial court discussed and considered the prosecutor's proffered reasons.  By then moving on to whether either counsel had a peremptory strike against the next prospective juror (with the court clerk noting for the record that the strike against Mr. Cole was counted), the trial court clearly accepted the strike, after assessing the credibility of the prosecutor's proffered explanation.  Like the trial court's ruling in <u>Messiah</u>, here the ensuing discussion was a succinct and adequate <u>Batson</u> ruling.

Thus, Stewart's claim that the trial court failed to satisfy <u>Batson</u>'s third step in its inquiry is without merit.

### d.  The Trial Court did not Err by Excluding the Two Prospective Jurors

 The Court also rejects Stewart's claim that the trial court erred in concluding that the prosecutor's race-neutral reasons for both Mr. Coleman and Mr. Cole were not pretextual.

On habeas review, the Court can only find a constitutional error where the record "compel[s] the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications."  <u>Watson</u>, 427 F. App'x at 61.

The first reason cited by the prosecution was that Mr. Cole may be distracted because he was self-employed and the record does not indicate that the trial court had "no permissible alternative but to reject" this reason as a pretext for discrimination.  Issues involving employment and inattentiveness are recognized as a race-neutral reasons for exclusion.  See <u>Mullins v. Bennett</u>, 228 F. App'x. 55, 56 (2d Cir. 2007);  <u>Valentine v. New York</u>, 252 F. App'x. 338, 389 (2d Cir. 2007) (affirming the district court's denial of habeas relief on a <u>Batson</u> claim where the race-neutral reason provided by the prosecutor was the juror's inattentiveness).  Although the Mr. Cole

31

indicated, during defense counsel's questioning, that his self-employment issue would not affect his consideration of defendant during the trial, Mr. Cole's self-employment presented a legitimate and credible basis for concern by the prosecution, and the record does not compel a finding that the prosecution's reliance on this reason was a pretext for discrimination.  The prosecutor also relied, as secondary reason, on Mr. Cole's purported "language barrier."  Although the record suggests that Mr. Cole may have had a Jamaican accent, Mr. Cole indicated that he had no problems with English, which the trial court itself noted in discussing the Batson issue.  While this point appears to undermine this second reason cited by the prosecutor (and also could cast doubt on the first reason cited by the prosecutor), the record here is insufficient to "compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications."  Watson, 427 F. App'x at 61; cf. Bowman v. Lee, No. 10-CV-0951, 2015 WL 1514378, at *13 (E.D.N.Y. Apr. 3, 2015), aff'd, 641 F. App'x 51 (2d Cir. 2016) (district court denied habeas petition raising Batson claim and explained that although "I would not credit the prosecutor's [second] argument, I cannot find that the trial judge ruled unreasonably in crediting the prosecutor's first argument as to the cousin's murder charge, even in light of the weaker second assertion"); Flowers v. Mississippi, 139 S. Ct. 2228, 2250 (2019) ("To be sure, the back and forth of a Batson hearing can be hurried, and prosecutors can make mistakes when providing explanations.  That is entirely understandable, and mistaken explanations should not be confused with racial discrimination.  But when considered with other evidence of discrimination, a series of factually inaccurate explanations for striking black prospective jurors can be telling."  (emphasis added).)

With respect to Mr. Coleman, the prosecution offered that the prospective juror had been previously accused of a crime very similar in nature to the robbery charges against Stewart.  (Tr.

108-09.)  A juror being accused of a crime, or even having family members accused of a crime, is recognized as an acceptable race-neutral justification to excuse a juror.  See Bowman v. Lee, 641 F. App'x 51, 53-54 (2d Cir. 2016).  And the record does not establish that this reason was a pretext for discrimination.  Stewart asserts that the prosecution's justification was suspect because the prosecutor did not challenge prospective juror number one, Krista Sehested, who, during voir dire, also indicated that she had been accused of a crime.  (Pet., at ECF p. 45.)  As an initial matter, defense counsel never cited this reason to the trial court.  Moreover, the record demonstrates that the prosecution ultimately did use a peremptory challenge to exclude Ms. Sehested from the jury, and, as such, Stewart's argument is factually incorrect.

For both of the jurors at issue, Stewart has not demonstrated that the "state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence . . . and that the corresponding factual determination was 'objectively unreasonable' in light of the record."  Miller-El v. Cockrell, 537 U.S. 322, 348 (2005).  Accordingly, Stewart's  habeas claims concerning these Batson challenges are denied.

### e.  Related Ineffective Assistance Claim Concerning Batson Challenges

Within the context of Stewart's Batson claim—specifically regarding his argument that the trial court failed to sufficiently rule on the Batson issue—Stewart states "[i]n any event the Petitioner's defense counsel was clearly ineffective on several levels."  (Pet., at ECF p. 50.)  In Petitioner's second C.P.L. § 440 motion, he raised the claim that "[c]ounsel was further ineffective for not objecting to many issues that were infact [sic] meritorious for appellate review, such as the issue with the Batson challenge trial counsel completely allowed the prosecutor and court to control the court record with out [sic] substantiating the defense reasons for the challenge and further contesting that the prosecutors reasons were in fact pretext for the truth."  (See Second

Mot. to Vacate J., Mar. 29, 2017, at pp. 3-17.)  Accordingly, the Court liberally construes Stewart's pro se habeas petition to include a claim that trial counsel was ineffective for failing to argue that the prosecutor's proffered reasons were pretextual.

As explained earlier, the trial court denied Stewart's second § 440.10 motion in its entirety. (See Dec. and Order, December 20, 2017, at pp. 1-2.)  Stewart did not seek leave to appeal that decision to the Appellate Division, and the time to do so has expired.  See C.P.L. § 460.10(4)(a) (providing 30 days to seek leave to appeal); Collazo v. Lee, No. 11-CV-1804, 2011 WL 6026301, at *3 (E.D.N.Y. Dec. 2, 2011) ("Under New York law, a defendant has thirty days to appeal a denial of a § 440 motion") (citing C.P.L. § 460.10(4)(a)).  Stewart also raised an ineffective assistance claim in third § 440.10 motion.  That motion was also denied and, again, Stewart did seek leave to appeal that denial.

Stewart's failure to appeal the trial court's denial of these two motions means that Stewart's ineffective assistance claims concerning the Batson challenges are now deemed exhausted, but procedurally barred.  See Collazo, 2011 WL 6026301, at *3 (finding claim to be "exhausted, but . . . deemed procedurally barred from federal habeas review" where petition failed to seek leave to appeal the denial of his § 440 motion).[10]  Stewart has not shown cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review on this ineffective assistance of counsel claim, and, thus, he cannot overcome this procedural bar. Coleman, 501 U.S. at 750.  Moreover, this claim also fails on the merits.

---

[10] There is a split of authority amongst district courts in the Second Circuit over whether the failure to seek leave to appeal the denial of a § 440.10 motion renders the claims therein to be deemed exhausted, but procedurally barred. See Small v. Diforilo, No. 12-CV-5583, 2016 WL 9737929, at *19 (S.D.N.Y. Sept. 9, 2016) (report and recommendation), adopted sub nom. Small v. Chappius, No. 12-CV-5583, 2017 WL 4342132 (S.D.N.Y. Sept. 28, 2017) (discussing split of authority).  Even if Stewart's claim was considered unexhausted and not procedurally barred, his claim would still be denied because it is substantively meritless.

While the Appellate Division concluded that, at trial, Stewart did not "claim that the prosecutor's race-neutral reasons for striking two prospective jurors were in fact pretextual," Stewart, at 1248, Stewart cannot establish that this omission prejudiced him. Although the Appellate Division invoked Stewart's failure to claim pretext below as one ground for rejecting his Batson arguments on appeal, the Appellate Division also proceeded to reject his Batson claims on the merits and this Court previously concluded above that, based on the record at trial, Stewart's underlying Batson challenges do not merit habeas relief. Accordingly, Stewart's related ineffective assistance claim also fails. See Carmichael v. Chappius, 811 Fed. App'x 41, 44 (2d Cir. 2020).

Moreover, the record demonstrates that defense counsel's performance did not fall outside the range of competent assistance or prejudice Stewart. With respect to Mr. Cole, the trial court considered and analyzed both of the reasons cited by the prosecutor for exercising a preemptory challenge and Stewart does not identify any additional arguments that counsel should have raised. With respect to Mr. Coleman, as explained earlier, the prosecutor's proffered reason was well-founded given the record and Stewart's newly articulated attempt to contrast Mr. Coleman and prospective juror number one, Krista Sehested, is factually incorrect and meritless.

Accordingly, this ineffective assistance of counsel claim concerning the Batson challenges is meritless.

### 2. Claims Concerning Stewart's Statement to Det. Harrison

#### a. Underlying Suppression Claim

Stewart claims that the hearing court erred by not suppressing his statements to law enforcement, which were allegedly taken in violation of his constitutional rights. For the following reasons, this claim is denied.

Stewart's claim that the trial court erred by not suppressing his statements rests on the following arguments: (1) his exchange with Det. Harrison was tantamount to a custodial interrogation; (2) he was not informed of his Miranda rights prior to making his statements; and (3) his statements were not made voluntarily and were not spontaneous.  (Pet. at ECF pp. 18-22.)

On direct appeal, Stewart raised his claim that his statements to law enforcement should have been suppressed on the above-mentioned grounds, and each argument was rejected by the Appellate Division on the merits.[11]  Stewart, 172 A.D.3d at 1248.  The Second Department agreed with the hearing court's decision to deny suppression of Stewart's statements and found that his pre-Miranda statements were voluntary and spontaneous and "not the result of any police conduct or questioning which reasonably could have been expected to elicit an inculpatory response from him."  Id. (citations omitted.)  The Court finds that Stewart's claim is properly exhausted, however he does not demonstrate that the state court's ruling was contrary to, or in violation of, established federal or constitutional law or was an unreasonable determination of the facts.  As such, this claim is denied.

The Fifth Amendment of the United States Constitution provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.  The Supreme Court recognizes that a custodial interrogation creates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."  Miranda v. Arizona, 384 U.S. 436, 467 (1966). As such, the Court held in Miranda that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-

---

[11] The Court notes that Stewart attached portions of his appellate brief to his petition, and, thus, the Appellate Division addressed the same arguments on direct appeal.

36

incrimination." Miranda, 384 U.S. at 444.  "Miranda's warning requirements, however, apply only to 'custodial interrogation.'"  Georgison v. Donelli, 588 F.3d 145, 155 (2d Cir. 2009) (quoting United States v. Newton, 369 F.3d 659, 668 (2d Cir. 2004)).  "This determination has two parts: (a) there must be an interrogation of the defendant, and (b) it must be while [he] is in 'custody.'" United States v. FNU LNU, 653 F.3d 144, 148 (2d Cir. 2011).

"The term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).  An "incriminating response" is "any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial." Innis at 301 n. 5.  Further, under Miranda, voluntered or spontaneous statements are not barred by the Fifth Amendment.  Miranda, 384 U.S. at 478; see also Wolfrath v. LaVallee, 576 F.2d 965, 973 n. 6 (2d Cir. 1978) ("since the statement which was litigated below was a gratuitously volunteered statement, Miranda itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures").

Stewart's claim involves his statements to Det. Harrison.  Following his July 29, 2015 arrest, Stewart was taken to the precinct where he stayed overnight.  The next day, Det. Harrison came into the precinct to interview Stewart, and, as such, Stewart was moved into an interview room where he was handcuffed and seated at table.  Prior to the interview, Det. Harrison opened the door to the interview room to introduce himself to Stewart, asked him if he wanted something to drink, and stated that he would be right back to speak with him.  (Tr. 642.)  In response, Stewart said "I know why I'm here, it's those crackheads, they said I robbed them." (Tr. 642.)  When Det.

Harrison told Stewart to just hold on and he would be right back, Stewart replied "don't bother, don't come back." (Tr. 642.)  Det. Harrison did not attempt to speak with Stewart afterwards.

It is clear that Stewart was in custody at the time he made the statements at issue.  The Court, however, agrees with the Appellate Division that the statements were not the product of interrogation or questioning which could have reasonably led to an inculpatory response.  The evidence presented at both the pretrial suppression hearing and at trial supported the finding that Stewart's statements were voluntary and spontaneous after Det. Harrison opened the door to the interview room, and the only question the detective asked was whether Stewart wanted something to drink.  Therefore, Stewart's statements are admissible even though Miranda warnings had not yet been given.  See Wolfrath v. LaVallee, 576 F.2d at 973 n. 6; see also United States v. Colon, 835 F.2d 27, 30 (2d Cir. 1987) (defendant's statement was spontaneous, and, thus, Miranda warnings were not required, where defendant "was not questioned, confronted with evidence, or even encouraged to be honest and tell the facts").  Stewart has not established that the state court's rejection of his claim was contrary to or an unreasonable application of federal law or an unreasonable determination of the facts.

Accordingly, Stewart's claim that the trial court erred by not suppressing his statements does not warrant habeas relief and, therefore, is denied.

### b.  Counsel's Failure to Argue Statement Was Unlawfully Obtained

Relatedly, Stewart argues he is entitled to habeas relief due to counsel's failure to argue in summation that his statements to Det. Harrison were unlawfully obtained.  Stewart raises this claim for the first time in his habeas petition, and, as such, it is unexhausted.  Notwithstanding, the Court reaches the merits of Stewart's argument.

38

Stewart's counsel argued, unsuccessfully, for suppression of his statements to law enforcement at his pre-trial hearing.  (Hr'g Tr. 26-27.)   During trial, the prosecution offered Stewart's spontaneous statements to Det. Harrison as evidence against him, and during summation, defense counsel did not argue that the Stewart's statements were unlawfully obtained.

Stewart is unable to demonstrate deficient performance as a result of defense counsel's summation arguments.  Whether Stewart's statements were taken in violation of his constitutional rights had already been litigated at his pretrial hearing, and the hearing court denied Stewart's motion to suppress the statements.  As such, Stewart is unable to demonstrate that counsel's performance was deficient for failure to make a meritless argument to the jury in summation.  It is well settled under Strickland that "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner [i]s entitled." Aparicio, 269 F.3d at 99.

Thus, Stewart's claim that counsel was ineffective is without merit.

### 3.  Prosecutorial Misconduct Claims

In his petition, Stewart raises two arguments that assert that the prosecution committed misconduct during his trial: (1) the prosecutor impeached her own witness; and (2) the prosecutor made improper comments during voir dire and summation.  (Pet. at ECF pp. 23-36.)  Based on these allegations, Stewart argues that he was denied his right to a fair trial.  For the reasons stated below, Stewart's prosecutorial misconduct claims are denied in their entirety.

### a.  Witness Impeachment Claim

Stewart asserts that he was denied a fair trial on the grounds that the prosecution improperly impeached Jennifer Shah.  Stewart raised his claim on direct appeal, and the Appellate Division stated that his claim was "unpreserved for appellate review and, in any event, without merit."

Stewart, at 1249.   As such, the state court "expressly relied on a procedural default as an independent and adequate state ground" in denying Stewart's unpreserved claim, but found in the alternative that it lacked merit.  Velasquez, 898 F.2d at 9.

To overcome the procedural bar, Stewart must demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 750.  Stewart has not shown cause for the default and actual prejudice, or that failure to consider his improper impeachment claim will result in a fundamental miscarriage of justice.  Thus, Stewart cannot overcome this procedural bar.  Even so, and in an abundance of caution, this Court also addressed the merits of Stewart's claim.

Criminal Procedure Law § 60.35 is a New York State statute governing when an attorney may impeach their own trial witness.  C.P.L. § 60.35.  However, "[n]either the Supreme Court nor the Second Circuit has held that a prosecutor's impeachment of her own witness may violate a criminal defendant's due process rights."  Escobar v. Senkowski, No. 02 Civ. 8066, 2005 WL 1307939, at *12 (S.D.N.Y. May 26, 2005), report and recommendation adopted as modified, No. 02 Civ. 8066, 2005 WL 2148712 (S.D.N.Y. Sept. 7, 2005).  Because the protections afforded by C.P.L. § 60.35 are not mandated by federal law or the Constitution, any error in applying C.P.L. § 60.35 is solely an error of state law and is not cognizable on habeas review.

Moreover, Stewart's attempt to raise this issue in the guise of a prosecutorial misconduct claim is meritless.  Stewart argues that the prosecutor wrongfully impeached Shah's testimony during her summation, rather than confronting her with prior inconsistent statements during her testimony.  As discussed in depth below, a prosecutor's comments must constitute "egregious misconduct" to violate Due Process.  See Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974);

see also United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999).  During her testimony, Shah stated that she drove Stewart in her silver Acura to the crime scene, and observed that he was arguing with Suarez over money, and also placed Karl and Pozowicz at the location.  The prosecutor's summation argument was fair comment considering Shah insisted she did not see Stewart with a gun or Stewart take any money from Suarez.  The prosecution's argument pointed to her testimony that she was Stewart's girlfriend, and very close to his family, along with the fact that she had just pled guilty for a stealing someone's identity, as reasons why the jury may question her credibility as to why she claims she did not see a gun or a robbery.  As such, the prosecution's summations comments regarding Shah did not "infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly, 416 U.S. at 643.

Accordingly, Stewart's prosecutorial misconduct claim with respect to wrongfully impeaching witness Jennifer Shah is denied.

### b.  Improper Comments Claim

In his petition, Stewart argues that the prosecutor committed misconduct by making various improper comments, thereby denying him a fair trial.  According to Stewart's petition, the following comments by the prosecution denied his right to a fair trial: (1) during jury selection, the prosecutor informed the potential jurors that witnesses were "mentally ill," "disabled," and "developmentally disabled"; (2) during summation, the prosecution made comments to inflame the jury, including "[w]e cannot have people running around these streets with guns robbing people"; (3) during summation, the prosecutor stated that Stewart knew he was guilty because he called the police to ask if they were looking for him; (4) the prosecution denigrated defense counsel during summation; and (5) the prosecutor vouched for witnesses.  (Pet., at ECF pp. 31-32.)  Stewart further contends that defense counsel should have objected to the alleged instances of

41

improper summation commentary, and counsel's failure to object rendered his assistance ineffective.  (Pet., at ECF pp. 31-32.)

Stewart raised the same arguments in his direct appeal. (See App. Div. Br., at pp. 38-43.) The Appellate Division stated that his claim was "unpreserved for appellate review and, in any event, without merit." Stewart, at 1249.  As such, the state court "expressly relied on a procedural default as an independent and adequate state ground" in denying Stewart's unpreserved claim, but found in the alternative that it lacked merit.  Velasquez, 898 F.2d at 9.  Stewart has not demonstrated cause for the default and actual prejudice, or that failure to consider his improper prosecutorial misconduct claim will result in a fundamental miscarriage of justice.[12]  Thus, Stewart cannot overcome this procedural bar.  Even so, and in an abundance of caution, this Court also addresses the merits of Stewart's claim and concludes that that these claims also fail on the merits.

*i.  Jury Selection Comments*

First, Stewart argues that the prosecutor committed misconduct when she questioned the panel of prospective jurors regarding whether they had any biases towards mentally disabled witnesses.  Following the prosecution's voir dire of the jury panel, defense counsel objected to the prosecutor's line of questioning regarding the mental health of the prosecution's witnesses and requested that the entire panel be excused on two grounds.  One argument was that the questions regarding mental health and disabilities tainted the panel.[13]  (Tr. 206-08.)  The trial court denied defense counsel's application.  (Tr. 211.)

---

[12] As discussed infra, Stewart asserts, as a separate claim, that his trial counsel for ineffective for failing to raise these objections at trial.  That claim is meritless and does not establish cause or prejudice.

[13] Defense counsel's second argument was that a prospective juror indicated that he knew Stewart, but did not say whether it was based on a good or bad experience.  (Tr. 209.)  The trial court ultimately denied the application on both grounds.  (Tr. 211.)

Trial courts have wide discretion in the jury selection process.  Skilling v. United States, 561 U.S. 358, 386 (2010).  On habeas review, a state trial court is entitled to a "presumption of correctness" after determining that a jury was impartial.  See Wheel v. Robinson, 34 F.3d 60, 65 (2d Cir. 1994).  Additionally, "the Supreme Court has made it clear that 'the trial court's findings of impartiality [may] be overturned only for manifest error.'"  Knapp v. Leonardo, 46 F.3d 170, 176 (2d Cir. 1995) (quoting Patton v. Yount, 467 U.S. 1025, 1031 (1984)).

Stewart cannot meet this burden.  The prosecutor was entitled to ask questions of the prospective jurors whether they had any biases towards individuals with mental disabilities as three of the prosecution witnesses were housed by the State through a program that places individuals with mental handicaps, with the understanding that those witnesses may have some difficulty communicating during their testimony.  The trial court's denial of defense counsel's application that this line of questioning tainted the jury was not manifest error.  As such, Stewart's claim has no merit. [14]

### ii.  Improper Summation Comments

The remainder of Stewart's arguments involve summation comments made by the prosecutor, including that the prosecutor made a consciousness of guilt argument, denigrated defense counsel, vouched for witnesses, and made a "safe streets" argument to inflame the jury.  For the reasons that follow, each of Stewart's arguments are without merit.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding."  Gonzalez v. Sullivan, 934 F.2d 419,

---

[14] To the extent that Stewart's ineffective assistance of counsel claim can be construed to include the argument that counsel was ineffective for failing to object to the prosecution's alleged improper voir dire, that claim has no merit as it is not supported by the record.  After the prosecution questioned the prospective jurors regarding possible biases towards individuals with mental disabilities, defense counsel objected on the grounds that the voir dire questions were improper, and that objection was overruled by the trial court.

424 (2d Cir. 1991) (quoting United States v. Young, 470 U.S. 1, 11 (1985)); see also United States v. Elias, 285 F.3d. 183, 190 (2d Cir. 2002).   To amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned."   Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted).   Rather, the prosecutor's comments "must represent 'egregious misconduct.'"   Celleri v. Marshall, No. 07-CV-4114, 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting Donnelly, 416 U.S. at 647); see also Shareef, 190 F.3d at 78 ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" (internal quote omitted)).   Thus, to warrant relief, the Court must conclude that the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   Darden, 477 U.S. at 181 (quoting Donnelly, at 643).

During trial, Det. Britton testified that Stewart called the precinct and left a message inquiring whether police were looking for him.  (Tr. 389-90, 397.)   The prosecutor argued during summation that this call by Stewart demonstrated consciousness of guilt.  It is permissible and appropriate for the prosecutor to make such an argument by drawing inferences from the evidence presented at trial.  Cooper v. Costello, No. 93-CV-5670, 1996 WL 1088929, at *15 (E.D.N.Y. July 23, 1996).  The prosecutor clearly made an argument based on the testimony at trial.  Thus, the comments made by the prosecutor during summation amount do not amount to egregious misconduct.

Stewart argues that the prosecution denigrated defense counsel.  According to Stewart, the prosecutor's summation argued that, when defense counsel cross-examined Suarez and Karl, defense counsel did not want honest answers.  (Pet., at ECF p. 31.)  However, the prosecutor's summation argument did not explicitly mention whether defense counsel wanted "honest"

answers.  The prosecutor simply stated that defense counsel did not cross-examine Suarez and Karl to the same extent as Pozowicz because defense counsel did not want their answers.  (Tr. 721-22.) During defense counsel's summation, defense counsel argued that the testimony of Suarez, Pozowicz, and Karl were inconsistent with one another, and that Pozowicz was "running the show" and influencing both Suarez and Karl.  (Tr. 696, 701.)  The prosecution is permitted to rebut arguments raised during a defendant's summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'"  Readdon v. Senkowski, No. 96-CV-4722, 1998 WL 720682, at *13 (S.D.N.Y. Oct. 13, 1998) (quoting Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished."  Pilgrim v. Keane, 2000 WL 1772653 at *3 (E.D.N.Y. Nov. 15, 2000).

Stewart further argues that the prosecutor vouched for the witnesses' credibility.  The arguments made by the prosecutor regarding why the jury could rely on the testimony of Suarez, Pozowicz, Karl, and, even to some extent, Shah were in direct response to arguments made by defense counsel during summation.  In particular, during defense counsel's summation, defense counsel argued that Pozowicz was "not shy about lying," Suarez was delusional, and that the jury should not accept the testimony of the civilian witnesses.  (Tr. 689, 695, 701.)  As such, the prosecutor's comment regarding the credibility of the civilian witnesses was fair argument and does not rise to the level of egregious misconduct.  Even if the rebuttal comments made by the prosecutor were objectionable, "the prejudicial effect of such objectionable statements is diminished" as the comments were made in direct to response to defense counsel's argument. Keane, 2000 WL 1772653 at *3.

Finally, Stewart points to the prosecutor's comments that we cannot have people out here robbing people with guns.  This comment—which is commonly referred to as a "safe streets" argument—was not an appropriate summation argument.  However, while inappropriate, this argument was no worse than other comments that other courts have found do not warrant habeas relief.  See Darden, 477 U.S. at 180 (denying habeas relief where the prosecutor referred to the defendant as an "animal," among other offensive comments); Jackson v. Conway, 763 F.3d 115, 149 (2d Cir. 2014) ("[T]he prosecutor's characterization of Jackson in her opening statement as 'twisted' and 'sadistic' was no more inflammatory than the statements made by the prosecutor in Darden, which the Court found did not warrant habeas relief.") (internal quotation marks omitted); see also Park v. Matthews, 567 U.S. 37, 47 (2012) (noting that "even if the [prosecutor's] comment is understood as directing the jury's attention to inappropriate considerations, that would not establish that the Kentucky Supreme Court's rejection of the Darden prosecutorial misconduct claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " (quoting Harrington v. Richter, 562 U.S. 58, 103 (2011))).  As such, Stewart's claim that the prosecution's summation commentary inflamed the jury is denied habeas relief.

Further, the Court does not find that Stewart has shown substantial prejudice as a result of the prosecutor's statements.  United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam).  Stewart faces a heavy burden that he cannot meet in light of the court's jury instructions. Even though defense counsel did not object to the prosecutor's comments, the trial court still instructed the jury that what the attorneys say during their summations is argument submitted for the jury's consideration, and nothing said by the attorneys during summations constitutes evidence. (Tr. 681-85.)  Thus, Stewart cannot demonstrate substantial prejudice.

Stewart has not established that the state court's rejection of his prosecutorial misconduct claim was contrary to or an unreasonable application of federal law or an unreasonable determination of the facts.  Accordingly, Stewart's prosecutorial misconduct claims are denied.

*iv.  Counsel's Failure to Object to Summation Comments*

Stewart's claim that trial counsel was ineffective for failing to object to the comments set forth above is meritless.  Courts have held that a defense counsel's decisions about whether to object "are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so." United States v. Cohen, 427 F.3d 164, 170–171 (2d Cir. 2005) (internal quotation marks and citations omitted); Alleyne v. Racette, No. 15-CV-1915 (SFJ), 2020 WL 2797521, at *13 (E.D.N.Y. May 28, 2020); Pham v. Kirkpatrick, 209 F. Supp. 3d 497, 507 (N.D.N.Y. 2016), aff'd, 711 F. App'x 67 (2d Cir. 2018); Mazique v. Ercole, No. 06–CV–1723(NGG), 2008 WL 2884370, *9 (E.D.N.Y. July 23, 2008) ("Objections, particularly during a prosecutor's summation, are generally considered strategic in nature and therefore are not generally grounds for federal habeas relief." (internal quotation marks omitted)).  As such, Stewart is unable to demonstrate that defense counsel's conduct constituted deficient performance.

Further, Stewart is unable to establish prejudice.  As discussed herein, Stewart has failed to demonstrate substantial prejudice as a result of the prosecutor's summation comments.  Modica, 663 F.2d at 1181.  Despite the fact that defense counsel did not object to the prosecutor's comments, the trial court still instructed the jury that what the attorneys say during summation is argument for the jury to consider, and not evidence.  Stewart cannot satisfy the prejudice prong required by Strickland.

Accordingly, Stewart's claim that defense counsel was ineffective for failing to object to the prosecution summation is denied habeas relief.

### 4. <u>Molineux</u> Ruling Claim

Stewart argues that the trial court's <u>Molineux</u> ruling permitting evidence regarding a prior check-cashing scheme involving Miguel Suarez denied his right to a fair trial. For the following reasons, this claim is denied.

Stewart fully exhausted his <u>Molineux</u> claim by raising it on direct appeal. (<u>See</u> App. Div. Br., at 37-45.) The Appellate Division found that the claim was meritless, and the evidence of the check-cashing scheme was "part of the narrative of events, and was probative of the defendant's motive for robbing an acquaintance who knew and could identify him." <u>Stewart</u>, 172 A.D.3d at 1248 (citations omitted). The Court finds that the Appellate Division's rejection of Stewart's claim was neither contrary to, nor an unreasonable application of, clearly established federal law and its decision was not based on an unreasonable determination of the facts.

Pursuant to New York State law, evidence of prior bad acts by a criminal defendant are admissible "to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan …; (5) the identity of the person charged with the commission of the crime on trial." <u>People v. Molineux</u>, 168 N.Y. 264, 291 (1901). Here, the prosecution argued that evidence of the prior check-cashing scheme completed the narrative of events leading up to the robbery, explained how Suarez was able to identify Stewart, and was probative of Stewart's motive and intent. The trial court ruled, prior to trial, that evidence of the check-cashing scheme would be admissible to establish motive and complete the narrative.

Pursuant to the trial court's ruling, both Miguel Suarez and Eric Pozowicz testified to the existence of Stewart's check-cashing scheme. Suarez testified that within days of meeting, Stewart took possession of his ATM card and pin number and used them to deposit checks and withdraw money from his Citibank account. (Tr. 411-13.) After a number of ATM withdrawals, Citibank

48

contacted Suarez on April 2, 2015, the day before the robbery, and Suarez closed his bank account, thus leaving Stewart without access to the account.  (Tr. 412-15, 475.)   Pozowicz testified that he knew that Stewart and Suarez were engaged in a fraudulent check scheme and had warned Suarez not to trust Stewart, but Suarez didn't listen.  (Tr. 475.)

As a general matter, the admissibility of evidence in state court is wholly a matter of state law and is therefore not subject to habeas relief, barring a showing that Stewart's due process rights were denied such that he was deprived a fundamentally fair trial.  See Estelle v. McGuire, 502 U.S. 62, 75 (1991).  More specifically, "[a] habeas claim asserting a right to relief on Molineux grounds must rise to the level of constitutional violation … because Molineux is a state law issue." Roldan v. Artuz, 78 F. Supp. 2d 260, 276–77 (S.D.N.Y. 2000) (citations omitted).  "The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional."  Green v. Herbert, No. 01-CV-1881, 2002 WL 1587133 at *12 (S.D.N.Y. July 18, 2002) (citations omitted).  As stated above, under New York State law, evidence of prior bad acts are admissible to prove the crime charged when it tends to establish motive, intent, and identity.  Molineux, 168 N.Y. at 291.

In this case, the trial court's ruling with respect to Stewart's prior bad act clearly fell within permissible Molineux evidence.  Evidence of Stewart's check-cashing scheme involving Suarez's Citibank account gave context to explain how Stewart and Suarez were acquainted.  Additionally, the fact that Stewart lost access to Suarez's bank account the day before the robbery transpired demonstrated a motive for Stewart to approach Suarez demanding money at gunpoint in broad

daylight.  As such, the trial court's ruling was within the limits proscribed by <u>Molineux</u> and state law.  Stewart has not shown that the trial court's <u>Molineux</u> ruling violated his right to a fair trial.[15]

Accordingly, habeas relief is not warranted based upon this claim.

### 5.  Insufficient Evidence Claim

Stewart argues that he is entitled to habeas relief for two reasons: (1) the evidence presented by the prosecution was legally insufficient, and thus failed to prove his guilt beyond a reasonable doubt; and (2) the evidence presented at trial was factually insufficient to support his conviction on the same charges, and thus was against the weight of the evidence.  (Pet. at ECF pp. 77-82.)  In his direct appeal, Stewart raised both claims before the Second Department and the court denied his claim, finding that it was unpreserved for appellate review, and, in any event, the evidence was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt."  <u>Stewart</u>, 172 A.D.3d at 1248 (citations omitted).  The court further found that verdict of guilt was not against the weight of the evidence.  <u>Id</u>. at 1249.  Despite finding his claims failed on the merits, the Appellate Division first denied Stewarts's claims on independent and adequate state grounds, and Stewart has failed to show cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review.  Therefore, Stewart cannot overcome this procedural bar. <u>See</u> <u>Coleman</u>, 501 U.S. at 750.  Moreover, both claims also fail on the merits.

---

[15]  Even if Stewart could establish that the state courts' <u>Molineux</u>'s ruling was erroneous, "an incorrect state court evidentiary ruling does not rise to the level of constitutional error necessary to warrant habeas relief, unless the error deprived [p]etitioner of a fundamentally fair trial."  <u>Alfini v. Lord</u>, 245 F. Supp.2d 493, 499-500 (E.D.N.Y. 2003) (citing <u>McLean v. McGinnis</u>, 29 F. Supp. 2d 83, 93 (E.D.N.Y. 1998)); <u>see</u> <u>also</u> <u>McKinnon v. Superintendent, Great Meadow Corr. Facility</u>, 422 F. App'x 69, 73 (2d Cir. 2011) ("[U]nless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in [the context of a habeas petition.]") "Such unfairness will only result where: '[T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, [and] highly significant.'" <u>McKinnon</u>, 422 F. App'x at 73 (quoting <u>Collins v. Scully</u>, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks omitted)).

As an initial matter, Stewart's claim that the jury's verdict was against the weight of the evidence is not cognizable here as it does not raise a federal question.   McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 F. App'x 69, 75 (2d Cir. 2011).  Because this claim is based solely on state law, it is unreviewable in a federal habeas corpus proceeding. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991), Butler v. Cunningham, 313 F. App'x 400, 401 (2d Cir. 2009); Smith v. Lee, No. 11-CV-0530, 2014 WL 1343066, at *10 (E.D.N.Y. Mar 31, 2014) ("[i]t is well settled that a 'weight of the evidence' claim is distinct from an 'insufficiency of the evidence' claim and is a state claim based on N.Y.C.P.L. § 470.15(5) that is not reviewable in a federal habeas proceeding.") (citing McKinnon, 422 F. App'x at 75).  Thus, Stewart's weight of the evidence claim is not cognizable on habeas review, and is denied.

As to Stewart's habeas claim based on the legal sufficiency of the evidence, he "bears a very heavy burden."  See United States v. Aguilar, 585 F.3d 652, 656 (2d Cir. 2009).  A criminal conviction will not be disturbed if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (quoting Jackson, 443 U.S. at 324).  When considering a claim of legally insufficient evidence, the facts are viewed in the light most favorable to the verdict.  See Garbutt v. Conway, 668 F.3d 79, 80-81 (2d Cir. 2012) (per curiam).  "In considering a petition for writ of habeas corpus based on insufficient evidence to support a

criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime."  Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993).

Having considered each of the crimes for which Stewart was convicted, the Court concludes that the Appellate Division's upholding of the convictions is neither contrary to, nor an unreasonable application of, clearly established federal law and its decision was not based on an unreasonable determination of the facts.

As mentioned above, Stewart was convicted of one count of Robbery in the First Degree and one count of Attempted Robbery in the First Degree.  Pursuant to the New York State Penal Law, "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime; displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  N.Y. Penal Law § 160.15(4).  "A person is guilty of attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  N.Y. Penal Law § 110.00.

In his petition, Stewart argues that the evidence at trial was insufficient because: (1) the investigating detectives did not locate video, or other evidence, from the stores, restaurant, or train station located near the scene of the crime; and (2) Jennifer Shah's testimony contradicted testimony given by Suarez, Pozowicz, and Karl.  (See Pet. at ECF pp. 77-82.)

These arguments are meritless.  When the Court considers the trial record in its entirety, there is substantial evidence to support the jury's determination of Stewart's guilt.  Over the course of the trial, the prosecution presented evidence via testimony of four eyewitnesses, all known to Stewart, including the two victims, Suarez and Pozowicz.  Stewart's argument that there was no

video evidence is not enough to demonstrate that the prosecution failed to meet their burden of proof.

Additionally, although Stewart argues that Shah's testimony contradicts the testimony given by Suarez, Pozowicz, and Karl, he has not met the high burden of demonstrating that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Flowers v. Fisher, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting Jackson, 433 U.S. at 324) (internal quotation marks omitted). Despite Shah testifying that she did not see Stewart with a gun or observe Stewart taking money from Suarez, Shah corroborated a number of facts established through the testimony of the other eyewitnesses. Moreover, to the extent that Shah's testimony contradicted the testimony of the other eyewitnesses, the jury was free to credit the contrary testimony from those other eyewitnesses. "Federal habeas courts are not free to reassess fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review [the] Court must presume that the jury resolved any questions of credibility in favor of the prosecution." Anderson v. Senkowski, No. CV-92-1007, 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992) (internal citations omitted).

Accordingly, Stewart's insufficient evidence claim is without merit and is denied.

**6. Trial Court Error Claims**

Petitioner claims that he was denied his right to a fair trial by the following trial court errors: (1) the trial court failed to hear Stewart's C.P.L. § 330.30 motion; and (2) the trial court failed to properly respond to jury note two. (Pet., ECF pp. 36-38.) Stewart raised these claims on direct appeal in his pro se supplemental appellate brief, and his claims were denied by the Appellate Division, finding that the claims were "unpreserved for appellate review, and, in any event, without merit." Stewart, at 1249. As such, the state court "expressly relied on a procedural

default as an independent and adequate state ground" in denying Stewart's unpreserved claims, but also found in the alternative that they lacked merit.  Velasquez, 898 F.2d at 9.

These claims are procedurally barred and Stewart has not shown cause for the default and actual prejudice, or that failure to consider his trial court error claims will result in a fundamental miscarriage of justice.  Thus, Stewart cannot overcome this procedural bar.  Moreover, these claims also fail on the merits.  Stewart also brings related ineffective assistance of counsel claims which are similarly meritless.

### a.  Jury Note Claim

Stewart argues that, in response to jury note two, the trial erred by failing to provide the jury with a copy of Martin Karl's April 4, 2015 statement to police.  (Pet., at ECF p. 37.)  Stewart's claim is not cognizable on habeas review, and, in any event, without merit.

Criminal Procedure Law § 310.30 establishes the procedure by which a trial court must respond to jury notes.  When responding to a jury note, N.Y. Crim. Proc. Law § 310.30 requires that the trial court must give "such requested information" that it "deems proper."  C.P.L. § 310.30.  Additionally, even if the state courts erred in denying Stewart's claim of a violation of N.Y. Crim. Proc. Law § 310.30, "[v]iolations or errors of state law or procedure generally do not constitute grounds for habeas review," and "[a] claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right."  Cornado v. Bellnier, No. 10 Civ. 5265, 2012 WL 6644637, at *5 (S.D.N.Y. Sept. 20, 2012) (citations omitted), adopted by 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012).  As such, Stewart's claim does not provide a basis for federal habeas relief.

In any event, the Court finds that Stewart's claim is meritless.  Jury note two included the following questions and requests: (1) "[w]here was Jesse/Jen at the time of the phone calls and

dates they were made?"; and (2) "[i]s there a statement from Marty [Karl] on April 4th?"  (Tr. 786.)
The trial court played the calls between Shah and Stewart to the jury, which both the prosecution
and defense counsel agreed was acceptable.  (Tr. 786-87.)   After a brief discussion regarding the
dates and times of the phone calls, the trial court stated it inform the jury there was no evidence in
the case regarding the timing of the phone calls or where Shah and Stewart were at the time the
calls were made.  (Tr. 787.)  Regarding Martin Karl's April 4, 2015 statement to police, the trial
court stated it would inform the jury that there was no statement from Karl introduced into
evidence, which was consistent with the trial record.  (Tr. 787.)

A review of the record demonstrates that the trial court followed the procedure required by
C.P.L. § 310.30.  Further, under New York law, a trial court is not required to provide a jury with
materials not introduced as evidence during trial.  See People v. Thatcher, 85 A.D.3d 1065, 1066
(2d Dept. 2011) (finding that, in response to a jury note requesting a police report that was not in
evidence, the trial court did not err by denying defendant's request to inform the jury there was
testimony regarding the report).  As such, Stewart's claim is without merit.

The Appellate Division's rejection of this claim was neither contrary to, nor an
unreasonable application of, clearly established federal law and its decision was not based on an
unreasonable determination of the facts

Accordingly, Petitioner's jury note claim is denied habeas relief.

Relatedly, Stewart further claims he is entitled to habeas relief on the grounds that defense
counsel was ineffective for failing to object to the trial court's handling of jury note two.  Stewart
raised his argument in his second § 440.10 motion, and it was denied by the trial court.  The trial
court held that, having decided in the first § 440.10 motion that there was no basis for any finding
that counsel was ineffective, there was "no basis to revisit those findings."  (See Dec. and Order,

Dec. 20, 2017).  Stewart, however, failed to appeal the trial court's denial of his second § 440.10 motion.  As such, Stewart's claim is deemed exhausted, but procedurally barred.  <u>Collazo</u>, at *3. Moreover, this claim is also meritless.

As discussed <u>supra</u>, Stewart's underlying claim that the trial court mishandled its response to jury note two is without merit.  Juries are not entitled to consider materials not included as evidence at trial.  As such, defense counsel's performance was not deficient where he failed to advance a meritless argument.  <u>See</u> <u>Aparicio</u>, 269 F.3d at 99.

Thus, Stewart's claim fails where failure to object to the trial court's response to jury note two does not demonstrate deficient performance under <u>Strickland</u>.

### b.   C.P.L. § 330.30 Motion Claim

Stewart seeks habeas relief on the grounds that the trial court erred by failing to accept or hear his <u>pro se</u> C.P.L. § 330.30 motion seeking to set aside his verdict.  Stewart's claim is rooted in state law, and, as such, is not entitled to habeas relief.  <u>See</u> <u>Word v. Lord</u>, 648 F.3d 129, 132 (2d Cir. 2011) (finding that federal law does not require states to provide a process for post-conviction relief, and, as such, "alleged errors in a post-conviction proceeding are not grounds for § 2254 review."); <u>see</u> <u>also</u> <u>Strong v. Warden, Attica Corr. Facility</u>, 10–CV–3452, 2012 WL 1886957, at *5 (E.D.N.Y. May 22, 2012) (finding claim that state court erred in denying § 330.30 motion not cognizable on federal habeas review).  In any event, his claim is without merit.

Prior to sentencing, Stewart filed a motion to set aside the verdict pursuant to C.P.L. § 330.30 based on the prosecution's alleged failure to prove a <u>prima</u> <u>facie</u> case.  (<u>See</u> Mot. to Set Aside Verdict, July 8, 2016, at ECF pp. 233-38.)  At sentencing, Stewart informed the trial court that he served his motion on the court clerk and the District Attorney's office, and he requested that the court adjourn his sentence to address his § 330.30 motion.  (S. 7-8.)  The trial court stated

56

that the eyewitness testimony was credible and that his guilt was proven beyond a reasonable doubt, and sentenced Stewart.  (S. 9-11.)  Additionally, during trial, defense counsel made a motion to dismiss on the same grounds, arguing that the prosecution failed to prove a prima facie case with respect to the charges against Stewart.  (Tr. 667.)  The trial court denied that motion.  (Tr. 668.)  Furthermore, for the reasons discussed supra, this Court has determined that there was sufficient evidence such that the prosecution met their burden of proving Stewart's guilt beyond a reasonable doubt.  Thus, Stewart's claim that the trial court erred in denying his C.P.L. § 330.30 motion is without merit and is denied habeas relief.

Relatedly, Stewart claims that he denied effective assistance of counsel on the grounds that counsel failed to join in his pre-sentence pro se motion to set aside the verdict pursuant to C.P.L. § 330.30.  Stewart argued this claim on direct appeal as part of his pro se supplemental appellate brief.  (Def.'s Pro Se Supp. App. Br., ECF p. 9.)  The Appellate Division held that Stewart's claim was unpreserved for appellate review and, in any event, without merit.  Stewart, at 1249.  As such, Stewart's claim is procedurally barred.  As he is unable to demonstrate cause for the default or that a fundamental miscarriage of justice would occur if his claim is not addressed, he is unable to overcome the procedural bar.  Moreover, this claim also fails on the merits.

As explained above, at the close of the prosecution's case, defense counsel made a motion to dismiss the charges on the grounds that the prosecution failed to prove a prima facie case, which was denied by the trial court.  (Tr. 667-68.)  As such, Stewart cannot demonstrate that counsel's performance was deficient for failure to join in his post-trial pro se motion to set aside his when the grounds for that motion had already been raised by defense counsel and denied by the trial court at the close of the government's case.  See Aparicio, at 99. Additionally, Stewart is unable to demonstrate that he was prejudiced by counsel's failure to join the motion as there is no evidence

57

that counsel's joining the motion would have led to a different result.  Defense counsel had previously raised a motion to dismiss, which was denied.  Moreover, the trial court ultimately heard Stewart's § 330.30 motion as part of his first § 440 motion; that motion was similarly denied. (See Dec. and Order, Jan. 11, 2017.)  Thus, Stewart's ineffective assistance claim fails as he is unable to demonstrate either deficient performance or prejudice as a result of counsel's failure to join in his pro se § 330.30 motion.

As explained above, Petitioner cannot demonstrate, for any of his ineffective assistance claims,  that defense counsel's performance was deficient, or that he was prejudiced pursuant to Strickland.  As such, all of Stewart's ineffective assistance of counsel claims are denied.

### III. CONCLUSION

The Court has considered all of Stewart's arguments and found them meritless. Accordingly, the petition is DENIED.

Because the Court has denied Stewart's petition, the Court also denies, as moot, Stewart's motions that requested that he be released on bond while his habeas was pending before this Court. (ECF No. 52; see also March 31, 2021 Order.)  The Court also denies the other motions filed by Stewart at ECF Nos. 41, 44, and 49.

A certificate of appealability shall not issue because Stewart has not made a substantial showing that he was denied any constitutional rights.  See 28 U.S.C. § 2253(c)(2).  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to mail a copy of this Order to petitioner and to close the case.

**SO ORDERED.**

Dated:  September 22, 2021
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE